UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Ronald M.,[1]
  *Plaintiff*,

  v.

FRANK BISIGNANO,[2] COMMISSIONER
OF SOCIAL SECURITY,
  *Defendant.*

No. 3:25-cv-00149-(VAB)

**RULING AND ORDER ON PENDING MOTIONS**

Ronald M. has filed an administrative appeal under 42 U.S.C. § 405(g) against the Commissioner of Social Security ("Commissioner"), seeking to reverse the decision of the Social Security Administration ("SSA") denying his application for Title II Disability Insurance Benefits ("DIB") under the Social Security Act. Compl., ECF No. 1 (Jan. 29, 2025) ("Compl."); Mot. to Reverse the Decision of the Comm'r, ECF No. 14 (May 28, 2025) ("Mot.").

The Commissioner has moved to affirm the decision. Mot. to Affirm the Decision of the Comm'r, ECF No. 19 (July 21, 2025) ("Def.'s Mot.").

For the reasons explained below, Ronald M.'s motion is **DENIED**, the Commissioner's motion is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] In opinions issued in cases filed under § 405(g) of the Social Security Act, 42 U.S.C. § 405(g), this Court will identify and reference any non-government party solely by first name and last initial in order to protect the privacy interests of social security litigants while maintaining public access to judicial records. *See* Standing Order – Social Security Cases, ECF No. 3 (December 9, 2024).

[2] Frank Bisignano became the Acting Commissioner of Social Security on May 7, 2025. Under Federal Rule of Civil Procedure 25(d), Frank Bisignano should be substituted for Michelle King as Defendant in this suit. No further action need be taken. 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Brief DIB and SSI Background

On November 13, 2020, Ronald M. filed an application for a period of disability and disability insurance benefits, alleging disability beginning May 12, 2019. Tr. 10. The agency denied the claim initially on May 20, 2021, and on reconsideration on September 23, 2021. *Id*. Ronald M. requested a hearing before an Administrative Law Judge on October 22, 2021, and Administrative Law Judge Imelda K. Harrington held a hearing on May 17, 2022. *Id*. On May 31, 2022, the ALJ issued an unfavorable decision finding that Ronald M. was not disabled through March 31, 2021, the date last insured. Tr. 21–22. The Appeals Council denied review on July 20, 2023. Tr. 1.

#### i. Work Activity and Reported Functional Limitations

In a Work Activity Report, Ronald M. reported that he attempted to return to work in July 2019 on a part-time basis, working "15 to 20 hours per week," but that he "wasn't able to do the job" and stopped working in August 2019. Tr. 239. He also reported that he returned to work again on December 9, 2020 for one day and later "officially resigned" on December 31, 2019. Tr. 239. In an agency summary of work activity, the agency similarly noted that Ronald M. alleged becoming disabled on May 12, 2019, returned to work in July 2019 at an average of 15 to 20 hours per week, stopped in August 2019 because he was no longer able to do the job, and tried again to return to work on December 9, 2020 for one day, and "officially resigned" on December 31, 2019. Tr. 261.

#### ii. Treating Records Addressing Fatigue and Orthostatic Symptoms

In treating records documenting the post-hospitalization period, Ronald M.'s primary care provider noted that his May 2019 hospitalization involved a "life threatening infection" and was

"complicated by an acute heart attack," and recorded that he had been out of work since then because he was unable to function in a high-level executive position due to symptoms including fatigue. Tr. 665. In a disability-related statement, the same provider documented that Ronald M. suffered from "severe fatigue," worsening pain, and "concentration deficits," and stated that he was unable to function in his "current high level executive position." *Id*. The provider also documented orthostatic hypotension, including systolic blood pressure "frequently dropping down into the 80s," which "makes him tired and dizzy." *Id*. In another disability-related entry, the provider noted that it had been nearly six months since the May 2019 hospitalization complicated by an acute myocardial infarction and described ongoing fatigue, concentration deficits, and severe orthostatic hypotension, concluding that Ronald M. was not capable of functioning in his high-level executive field. Tr. 669.

### iii. Cardiology Follow-Up

In a cardiology follow-up note, Ronald M.'s cardiologist documented that he was doing well from a cardiovascular standpoint and was not having cardiovascular symptoms. Tr. 559.

### iv. Consultative Psychological Evaluation

At a consultative psychological evaluation on April 26, 2021, Ronald M. reported that he was unable to work because he was "tired," had a "lack of energy," and had a "lack of sustained focus." Tr. 1210. He reported that he could bathe, groom, dress, cook, clean, do laundry, and grocery shop, but that he could not do those activities for as long as before and needed breaks because he did not have sustained energy. Tr. 1210. He also described his typical day as including having coffee, reading the paper, cleaning and taking care of the house, taking a short walk, reading, and stopping by the library. Tr. 1211.

### B. Procedural History

On January 29, 2025, Ronald M. commenced this action by filing a Complaint seeking judicial review of the Commissioner's final decision. Compl., ECF No. 1.

On February 24, 2025, the case was transferred and reassigned to Judge Victor A. Bolden for all further proceedings. Order of Transfer, ECF No. 9.

On March 21, 2025, the Commissioner filed the certified administrative record. Social Security Trs., ECF Nos. 10, 11.

On May 28, 2025, Ronald M. filed his Motion to Reverse the Decision of the Commissioner. Pl.'s Mot. to Reverse, ECF No. 14. The Court later granted the Commissioner's consent motion for an extension of time to respond. Order, ECF No. 17; Consent Mot. for Extension of Time, ECF No. 16.

On July 21, 2025, the Commissioner filed a Motion to Affirm the Decision of the Commissioner. Def.'s Mot. to Affirm, ECF No. 19.

## II. STANDARD OF REVIEW

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). In reviewing a final decision of the Social Security Administration, the Court is limited to determining whether the Commissioner's conclusions were supported by substantial evidence in the record and were based on the correct legal standard. *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (explaining that "[i]n reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard," citing 42 U.S.C. § 405(g)).

A reviewing court may set aside the Commissioner's decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole. *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (per curiam); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ...."). "Substantial evidence" is "more than a mere scintilla." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown v. Apfel*, 174 F.3d 59, 61 (2d Cir. 1999) (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Richardson*, 402 U.S. at 401).

In determining whether the Commissioner's findings are supported by substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)); *see also Talavera*, 697 F.3d at 151 quoting *Richardson*, 402 U.S. at 401). Under this deferential standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently. *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and reject the Commissioner's findings of fact only "if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

When the Commissioner's decision applies the correct legal principles and is supported by substantial evidence, that decision will be sustained. *Kumar v. Berryhill*, No. 3:16-CV-1196 (VLB), 2017 WL 4273093, at *4 (D. Conn. Sept. 26, 2017) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). Conversely, "[a]n ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). A court generally need not remand, however, if the ALJ committed only harmless error, such that "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### III. DISCUSSION

#### A. Eligibility for Disability Insurance Benefits

In order to be entitled to benefits under the Social Security Act, a plaintiff must demonstrate that they have a disability, defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This determination is made through a five-step evaluation.

First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(b).

If they are not engaged in such activity, the ALJ must proceed to Step Two to determine whether the claimant has a severe medically determinable impairment or combination of

impairments. *Id.* § 404.1520(c). An impairment will be considered severe if it significantly limits a claimant's ability to perform "basic work activities." *Id.*

If the claimant has a medically determinable severe impairment, the ALJ proceeds to Step Three to determine whether any identified severe impairments meet or medically equal those identified in Appendix 1. *Id.* § 404.1520(d). These impairments are *per se* disabling, assuming a claimant meets the duration requirement. *Id.*

If the claimant's impairments are not *per se* disabling, then the ALJ proceeds to Step Four, which entails assessing the claimant's residual functional capacity, or their ability to work in light of their limitations. *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e), 404.1545(a)(1).

At Step Five, the ALJ must establish whether the claimant's residual functional capacity will allow the performance of any past relevant work. If the claimant is unable to perform past relevant work, the ALJ bears the burden of proving that, accounting for the claimant's age, education, work experience, and residual functional capacity, the claimant can perform other work that exists in significant numbers in the national economy. *Id.* § 404.1520(g)(1). If the ALJ proves all of that, then the claimant is not disabled. *Id.*

The claimant bears the burden of proving the requirements of Steps One through Four, after which the burden shifts to the Agency to prove that the claimant is capable of working. *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("The burden is on the claimant to prove that he is disabled within the meaning of the Act . . . . However, if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the Secretary to show there is other gainful work in the national economy which the claimant could perform.").

**B. The ALJ's Decision**

Ronald M. seeks review and reversal or remand of the Commissioner's final decision. Compl. at 4, WHEREFORE ¶ 2 (asking that "[t]he Decision of the Administrative Law Judge, Appeals Council and the Commissioner of Social Security be reviewed, revised and set aside, that the claim of the plaintiff for Social Security Disability Insurance Benefits be allowed, and that the Commissioner of Social Security be ordered to make payment of the plaintiffs claim; or in the alternative that the matter be remanded to the defendant Commissioner for further proceedings in accordance with law"). The Court therefore reviews the ALJ's decision for legal error and substantial evidence. *See Lamay*, 562 F.3d at 507 (explaining that "[i]n reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard").

The Court addresses each issue in turn.

### C. Residual Functional Capacity and Opinion Evidence

#### i. Residual Functional Capacity

The RFC "must include a narrative discussion describing how the evidence supports each conclusion," citing specific medical and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).

Ronald M. argues that the ALJ included a sit-stand finding that lacks record support, specifically the premise that he would remain on task while alternating positions. Tr. 1874 (finding that he "must be allowed an alternating sit/stand option every three to four minutes, every thirty minutes (or every six to eight minutes, every hour) while remaining on task"). Mot. at 13 (arguing that the ALJ "made a crucial finding without substantial evidence in the Record to

8

support it" and that the "while remaining on task" premise is "unsupported by any Record evidence").

The Commissioner responds that the RFC is supported by substantial evidence, including prior administrative medical findings addressing a sit-stand option and treatment evidence reflecting improvement and normal cardiovascular examinations. Tr. 76 (finding: "[m]ust periodically alternate sitting & standing every half hour for 3-4 min to relieve pain & discomfort."). Tr. 554 (stating: "[h]e reports that he is doing, 'great' from a heart standpoint."). Tr. 559 (stating: "I am happy to report that he is doing well from a cardiovascular standpoint. He is not having any cardiovascular symptoms at all."). Def.'s Mot. at 1 (asserting that "substantial evidence supports the Commissioner's final decision," that after May 2019 Plaintiff "improved," and that he began "walking at least three – and sometimes up to ten – miles daily").

The Court agrees.

The disputed sit-stand component of the RFC is supported by record evidence the agency identified at the administrative levels. Tr. 76 (finding: "[m]ust periodically alternate sitting & standing every half hour for 3-4 min to relieve pain & discomfort."). Ronald M. is correct that the ALJ's RFC includes the phrase "while remaining on task." Tr. 1874 (finding an alternating sit/stand option "while remaining on task"). Mot. at 13 (contending the ALJ's "while remaining on task" construct is "unsupported by any Record evidence"). But under the substantial-evidence standard, the question is not whether the record could support a different formulation, but whether the ALJ's formulation has "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown*, 174 F.3d at 61 (citing *Richardson*, 402 U.S. at 401).

Here, the record contains evidence supporting the inference that Ronald M. retained the capacity to sustain work-related functioning notwithstanding symptoms, including cardiology

9

evidence documenting improvement and stability. Tr. 554 (stating: "[h]e reports that he is doing, 'great' from a heart standpoint."). Tr. 559 (stating: "[h]e is not having any cardiovascular symptoms at all."). The record also reflects that the prior administrative medical findings contemplated a periodic sit-stand alternation (every half hour for three to four minutes), which aligns with the ALJ's sit-stand structure. Tr. 76 (finding: "every half hour for 3-4 min"). Def.'s Mot. at 1 (contending that Plaintiff "improved" and began "walking at least three – and sometimes up to ten – miles daily").

Ronald M. relies on hearing testimony that, when he takes a stretch break, he is away from the task. Tr. 1927 (testifying: "I try to get up every 45 minutes to an hour"). Tr. 1931–32 (testifying: "I usually will go get a glass of water" and "just have a walk around," and confirming he is "away from whatever it is that you were doing … while you were sitting"). Mot. at 13–14 (quoting this hearing testimony and arguing the ALJ's on-task construct is a "fiction"). The record also reflects vocational testimony that "customary tolerance would be no more than 10% time off task." Tr. 1938–39. Mot. at 14 (quoting the vocational witness that "customary tolerance would be no more than 10% time off task").

But the Court must "defer to the Commissioner's resolution of conflicting evidence." *Cage*, 692 F.3d at 122.  And "absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell*, 596 F. Supp. 2d at 448.

Accordingly, substantial evidence supports the ALJ's RFC assessment, including the sit-stand limitation. *Selian*, 708 F.3d at 417 (explaining "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld.").

### ii. Opinion Evidence

A reviewing court may set aside the Commissioner's decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole. *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (per curiam) (stating, "[w]e may set aside the Commissioner's decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole"). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera*, 697 F.3d at 151 (quoting *Richardson*, 402 U.S. at 401).

In determining whether substantial evidence supports an ALJ's determination, the court must examine the entire record, including contradictory evidence and competing inferences. *Selian*, 708 F.3d at 417 (quoting *Mongeur*, 722 F.2d at 1038) (per curiam) (stating that "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."). Absent an error of law, the court must uphold the Commissioner's decision if it is supported by substantial evidence. *Campbell*, 596 F. Supp. 2d at 448 (noting that an "absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently."). The Court must "defer to the Commissioner's resolution of conflicting evidence," *Cage*, 692 F.3d at 122, and reject findings of fact only "if a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). "If there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

With respect to medical opinions and prior administrative medical findings, "the Commissioner 'will not defer or give any specific evidentiary weight . . . to any medical

opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources.'" *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (alteration in original) (quoting 20 C.F.R. § 404.1520c(a)) (explaining that "the Commissioner 'will not defer or give any specific evidentiary weight . . . to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources.'"). Instead, the Commissioner considers specified factors, including "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(c), 416.920c(c)) ("(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'"). The ALJ must "articulate how [they] considered the medical opinions and how persuasive [they] [find] the opinions." *Id.* at 8 ("articulate how [they] considered the medical opinions and how persuasive [they] [find] the opinions.").

      Ronald M. argues that the treating-source opinion evidence supports disabling limitations in endurance and concentration, and that the ALJ minimized fatigue-related limitations that bear directly on his ability to perform executive-level work. Tr. 665 (stating, "[h]e is unable to function in his current high level executive position due to fatigue and pain and concentration deficits," and noting, "[h]is blood pressure systolic is frequently dropping down into the 80s, which makes him tired and dizzy."). Mot. at 13–14 (arguing the ALJ's "while remaining on task"

construct is "unsupported by any Record evidence" and quoting testimony that during a "stretch break" he is "away from whatever it is that you were doing"). Mot. at 20 (quoting Dr. Christensen's statement: "Patient with extreme fatigue and weakness. Unable to maintain endurance or concentration to perform high level executive function/decision making.").

The Commissioner responds that the ALJ reasonably evaluated the opinion evidence under the applicable regulatory factors, and permissibly found the treating opinions minimally persuasive in light of supportability and consistency, including longitudinal treatment records showing improved symptoms and largely normal cardiovascular findings. Tr. 559 (stating, "I am happy to report that he is doing well from a cardiovascular standpoint. He is not having any cardiovascular symptoms at all."). Tr. 624 (documenting that his "energy level is getting better" and "tried to walk three to four miles every day," though he "still became lightheaded easily" and "had days when he was fatigued"). Def.'s Mot., at 12 (arguing that "the ALJ reasonably found that Dr. Christensen's opinion was 'minimally persuasive' because it was not supported by her own treatment notes or consistent with other treatment notes in the record"). Def.'s Mot., at 15 (arguing that "the ALJ reasonably found that Dr. Longhitano's opinion was 'minimally persuasive' because it was not supported by his own treatment notes or consistent with other treatment notes in the record").

The Court agrees.

The record reflects competing opinion evidence regarding the extent to which fatigue and hypotension affected Ronald M.'s ability to sustain executive functioning. Compare Tr. 334–35 (Dr. Christensen listing diagnoses and stating that, due to "extreme fatigue and weakness," he was "unable to maintain endurance or concentration to perform high level executive function/decision making," and stating he was "persistently hypotensive despite med[ication]

adjustment"), with Tr. 559 (cardiologist stating, "[h]e is not having any cardiovascular symptoms at all."). The issue is not which interpretation the Court should adopt in the first instance, but whether the ALJ's weighing of these opinions is supported by substantial evidence. *Talavera*, 697 F.3d at 151 (quoting *Richardson*, 402 U.S. at 401) (defining "[s]ubstantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

Substantial evidence supports the ALJ's assessment that the more restrictive treating opinions were not fully supported by the longitudinal record as the ALJ discussed it. Tr. 554 (stating, "[h]e did have extreme lightheadedness on Flomax, with a blood pressure of 80 systolic. That medication was stopped."). Tr. 559 (stating, "[h]e is not having any cardiovascular symptoms at all."). Tr. 624 (documenting his "energy level is getting better" and efforts to walk "three to four miles every day," while also noting ongoing lightheadedness and fatigue). Def.'s Mot., at 12–13 (contending that Dr. Christensen's opinion was undermined by her own notes documenting "improving energy levels" and walking "at least three to four miles per day"). Def.'s Mot., at 16 (contending that Dr. Longhitano's opinion was inconsistent with his own notes reflecting that Plaintiff was "doing well from a cardiovascular standpoint" and that blood pressure was "normal" or "well controlled").

Ronald M. points to treating-source statements explicitly linking fatigue and hypotension to impaired executive functioning and concentration. Tr. 665 (stating he was "unable to function" in a "high level executive position" due to "fatigue" and "concentration deficits," and noting systolic pressure "frequently dropping down into the 80s"). Tr. 339 (Dr. Longhitano stating he was "persistently hypotensive and unable to concentrate on job duties."). Mot. at 20–21 (arguing that the "key critical issue" is whether fatigue takes him "off task for more than 10% of a

workday," and quoting the vocational testimony that "customary tolerance would be no more than 10% time off task").

But where the record supports competing inferences, the Court must "defer to the Commissioner's resolution of conflicting evidence." *Cage*, 692 F.3d at 122 (stating "defer to the Commissioner's resolution of conflicting evidence,"), and consider that substantial evidence can exist even when contrary evidence is also present. *Selian*, 708 F.3d at 417 (quoting *Mongeur*, 722 F.2d at 1038) (stating that "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.").

Accordingly, the ALJ's evaluation of the opinion evidence is supported by substantial evidence. *Selian*, 708 F.3d at 417 (stating "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld.").

## D. Step Four: Past Relevant Work

At step four, the ALJ determines whether the claimant can perform past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant bears the burden through step four. *Carroll*, 705 F.2d at 642 (explaining that "[t]he burden is on the claimant to prove that he is disabled within the meaning of the Act . . . . However, if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the Secretary to show there is other gainful work in the national economy which the claimant could perform.").

Ronald M. argues that the step-four finding lacks substantial support because his past work required complex, fast-paced executive demands that are inconsistent with impaired sustained concentration and the need to leave the task for breaks. Tr. 271 (job description stating: "[h]andles detailed-complex concepts and problems, balances multiple tasks simultaneously, and makes rapid decisions regarding administrative issues. Plans and meets deadlines and maintains

15

a flexible work schedule to meet executive demands."). Mot. at 13 (arguing that the ALJ "made a crucial finding without substantial evidence in the Record to support it" and that the "while remaining on task" construct is "unsupported by any Record evidence"); Mot. at 15 (arguing that the COO job "is not, in short, a job that an individual with impaired 'durational concentration' and a loss of focus can perform."). He also points to vocational testimony regarding tolerance for time off task. Tr. 1938–39 (testifying, "customary tolerance would be no more than 10% time off task"). Mot., at 14 (quoting the vocational witness that "customary tolerance would be no more than 10% time off task").

The Commissioner responds that the step-four finding is supported by vocational evidence applying the RFC adopted by the ALJ. Tr. 1936–37 (VE testifying that Ronald M.'s past work was as a "Chief Operating Officer . . . DOT # 189.117-026" and "Chief Financial Officer, DOT # 160.167-058," and testifying that the RFC hypothetical individual could perform the past work). Def.'s Mot., at 1–2 (stating that the ALJ found Ronald M. "could perform his past relevant work with those functional limitations" and that "[s]ubstantial evidence supports the ALJ's decision"); Def.'s Mot., at 22 (arguing that "the vocational expert testified that this individual could perform both of Plaintiff's past occupations . . . as customarily and actually performed" and that "the vocational expert's testimony supports the ALJ's finding").

The Court agrees.

The record reflects that Ronald M.'s prior work included highly skilled executive work, and it contains a detailed description of the mental demands of the chief operating officer role. Tr. 271 (stating: "[h]andles detailed-complex concepts and problems, balances multiple tasks simultaneously, and makes rapid decisions regarding administrative issues. Plans and meets deadlines and maintains a flexible work schedule to meet executive demands."). The ALJ,

however, did not decide step four in the abstract. The ALJ relied on vocational expert testimony in applying the RFC. Tr. 1936–37 (VE identifying Ronald M.'s past work as "Chief Operating Officer . . . DOT # 189.117-026" and "Chief Financial Officer, DOT # 160.167-058," and testifying that the hypothetical individual with the RFC could perform that past work "both as generally and as actually performed"). Def.'s Mot., at 22 (stating that "the vocational expert testified that this individual could perform both of Plaintiff's past occupations . . . as customarily and actually performed"). That testimony is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown*, 174 F.3d at 61 (citing *Richardson*, 402 U.S. at 401).

Ronald M.'s contrary argument essentially recycles his disagreement with the RFC, particularly the assumption that he could alternate positions "while remaining on task," and his view that the executive mental demands and off-task tolerance compel a different result. Mot., at 13–14 (asserting that the ALJ "resorted to a fiction of her own making" that he would remain "on-task" during breaks and emphasizing the VE's statement that "customary tolerance would be no more than 10% time off task"); Mot., at 15 (arguing that the COO role is not one he can perform given "impaired 'durational concentration'").

But the Court must "defer to the Commissioner's resolution of conflicting evidence." *Cage*, 692 F.3d at 122. And where substantial evidence supports the RFC and the vocational testimony is keyed to that RFC, the ALJ may rely on the VE at step four. Def.'s Mot., at 24 (arguing that because "substantial evidence supports the RFC," Ronald M.'s "vocational expert challenge" is derivative and "must therefore be rejected").

Accordingly, substantial evidence supports the ALJ's step-four determination that Ronald M. could perform his past relevant work through the date last insured. *Selian*, 708 F.3d at 417

(stating "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld.").

## IV. CONCLUSION

For the reasons set forth above, Ronald M.'s Motion to Reverse the Decision of the Commissioner is **DENIED**, and the Commissioner's Motion to Affirm the Decision of the Commissioner is **GRANTED**. The Commissioner's decision is **AFFIRMED**.

The Clerk of Court is respectfully directed to enter judgment for the Commissioner and close this case.

**SO ORDERED** at New Haven, Connecticut, this 6th day of March, 2026.

                                             */s/ Victor A. Bolden*
                                             Victor A. Bolden
                                             United States District Judge